**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

|  |  |
|---|---|
| **JOHN PLARAS, WILLIAM HARLESS, and DIONNE DAWKINS, individually and on behalf of all others similarly situated,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**DHL EXPRESS (USA), INC.,**<br><br>*Defendant.* | Case No.:_____<br><br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiffs John Plaras, William Harless, and Dionne Dawkins (together, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant DHL Express (USA), Inc. ("Defendant" or "DHL") and alleges, upon personal knowledge as to Plaintiffs' own actions and to counsels' investigation, and upon information and belief as to all other matters, as follows:

**INTRODUCTION**

1.      For almost a year, the federal government charged tariffs on certain products imported into the United States, under the International Emergency Economic Powers Act ("IEEPA"). On February 20, 2026, the Supreme Court of the United States held that those tariffs were not authorized by IEEPA and were thus invalid—in other words, they were illegal. In many situations, like the one at issue in this case, the party that ultimately had paid the tariff was undisputedly the consumer. Consequently, those consumers are entitled to a refund of the tariffs paid. That is true regardless of whether the entities that charged consumers the tariffs and which took their money to pay the tariffs, and which then paid that money to the United States as the

1

"importers of record," ultimately receive a refund from the United States. But it is especially true when those entities do receive a refund—and several of those entities have already sued to receive such a refund.

## PARTIES, JURISDICTION & VENUE

2. Plaintiff John Plaras is a resident citizen of the State of New Jersey. Plaintiff Plaras has purchased goods through private carriers such as the Defendant and was required to pay tariffs for the shipment of goods coming from other countries. Those tariffs were collected by the Defendant, as the "importer of record," and then paid to the United States.

3. Plaintiff William Harless is a resident citizen of the State of Florida. Plaintiff Harless has purchased goods through private carriers such as the Defendant and was required to pay tariffs for the shipment of goods coming from other countries. Those tariffs were collected by the Defendant, as the "importer of record," and then paid to the United States.

4. Plaintiff Dionne Dawkins is a resident citizen of the State of New York. Plaintiff Dawkins has purchased goods through private carriers such as the Defendant and was required to pay tariffs for the shipment of goods coming from other countries. Those tariffs were collected by the Defendant, as the "importer of record," and then paid to the United States.

5. Defendant DHL Express (USA), Inc. is an Ohio corporation with its principal place of business in Plantation, Florida. DHL is a licensed customs broker that serves as the importer of record and filer of entry for consumer shipments transported through DHL's international shipping services, including, upon information and belief, Plaintiffs' shipment at issue in this action. Upon information and belief, DHL advanced the IEEPA duties, then collected the advance from consumers and is now seeking recovery of the IEEPA duties that were funded by consumers, including Plaintiffs and proposed Class members.

6. This Court has subject matter jurisdiction over this action pursuant to the Class

Action Fairness Act ("CAFA"), 28 U.S.C. § 1332, because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

7. The Court has jurisdiction to enter declaratory relief under 28 U.S.C. § 2201 because an actual controversy exists between the parties regarding DHL's obligation to return to the consumers who paid them the IEEPA duties and fees DHL collected, as well as any IEEPA duty refunds DHL recovers from the United States.

8. This Court has personal jurisdiction over Defendant, because their principal place of business is in this District. Defendant has also purposefully availed itself of the laws, rights, and benefits of the State of Florida.

9. Venue is proper under 28 U.S.C. § 1391 because a Defendant maintains a principal place of business in this District and a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in and emanated from this District.

## FACTUAL ALLEGATIONS

10. This is a class action seeking restitution, damages, and equitable relief arising from Defendant unlawfully charging and collecting tariff-related fees from Plaintiffs and thousands of similarly situated consumers and businesses throughout the United States.

11. Defendant operates as a common carrier and customs broker, providing shipping, logistics, and import clearance services for goods transported into the United States. In that capacity, Defendant routinely charges its customers purported "duties," "tariffs," and related surcharges as part of the importation and delivery process.

12. Section 321(a)(2)(C) of the Tariff Act of 1930, as amended, includes a subsection commonly known as the *de minimis* exemption, which authorizes the Secretary of the Treasury

to waive certain duties, fees, and other taxes on certain low-value imports.

13.     In 2024, for example, there were nearly four million low-value imports a day, and roughly 1.3 billion overall.[1]

14.     In or around August 2025, the federal government ended the *de minimis* exemption for low-value imports, which had allowed shipments under $800.00 to enter the United States duty-free. *See* Executive Order 14324. As a result, every shipment, regardless of its value, country of origin, mode of transportation, or method of entry, became subject to duties, taxes, and processing fees.

15.     Beginning in 2025, Defendant imposed and collected tariff-related charges purportedly authorized under the IEEPA via U.S. Customs and Border Protection ("CBP").

16.     In its capacity as an importer of record, upon information and belief, Defendant advanced duties, taxes, and fees authorized by IEEPA to CBP on behalf of the recipient of the imported goods.

17.     Defendant then billed the consumers directly for those charges.

18.     The consumer bore the economic burden of the tariff, not Defendant.

19.     On February 20, 2026, the Supreme Court of the United States held that IEEPA does not authorize the United States to impose tariffs and that such tariffs were unlawful and imposed without statutory authority. *Learning Res., Inc. v. Trump*, 607 U.S. ___ (2026).

20.     As a result of that decision, the tariffs that Defendant relied upon to impose charges on Plaintiffs and Class members were unlawful, invalid, and void.

21.     Despite lacking lawful authority, Defendant charged, collected, and retained tariff-related fees from Plaintiffs and Class Members.

_____

[1] https://www.pbs.org/newshour/show/what-consumers-can-expect-as-de-minimis-exemption-ends#:~:text=Americans%20are%20no%20longer%20able,at%20the%20libertarian%20Cato%20Institute.

22. Defendant was not authorized by contract, statute, or law to charge or retain unlawful tariff-related fees.

23. Defendant's conduct breached its contracts with Plaintiffs and Class members and violated the fundamental obligation of good faith and fair dealing inherent in those agreements.

24. Defendant was unjustly enriched by collecting and retaining money to which it was not legally entitled.

25. Plaintiffs and Class members suffered economic injury as a direct result of Defendant's conduct, including payment of unlawful tariff-related charges and associated fees.

26. Defendant's conduct was uniform and systematic, affecting thousands of customers nationwide, and was carried out pursuant to standardized policies, practices, and contractual terms.

27. Plaintiffs bring this action on behalf of themselves and all similarly situated persons to recover damages, restitution, disgorgement, and equitable relief arising from Defendant's unlawful conduct.

28. Absent relief from this Court, Defendant will continue to retain funds obtained through unlawful charges.

**PLAINTIFFS' ALLEGATIONS**

**Plaintiff John Plaras**

29. In or around May 2025, Plaintiff Plaras placed a pre-order for personal goods that was shipped via DHL in October, 2025 from Japan.

30. Following the purchase, on October 23, 2025, Plaintiff Plaras received an invoice via e-mail from DHL directing him to pay $68.83 in IEEPA tariffs and/or fees related to the purchase.

31. On October 23, 2025, Plaintiff Plaras paid the $68.83 in IEEPA tariffs to DHL. The Transaction ID for the payment was 175353792-79538886.

**Plaintiff William Harless**

32.     In or around October, 2025, Plaintiff Harless placed an order for personal goods that was shipped via DHL.

33.     Following the purchase, on October 6, 2025, Plaintiff Harless received an invoice via e-mail from DHL directing him to pay $229.79 in IEEPA tariffs and/or fees related to the purchase.

34.     On October 6, 2025, Plaintiff Harless paid the $229.79 in IEEPA tariffs to DHL. The Transaction ID for the payment was 173099980-77313530.

**Plaintiff Dionne Dawkins**

35.     In or around October, 2025, Plaintiff Dawkins placed an order for personal goods from Germany that was shipped via DHL.

36.     Following the purchase, on October 31, 2025, Plaintiff Dawkins received an invoice via e-mail from DHL directing her to pay $72.49 in IEEPA tariffs and/or fees related to the purchase.

37.     On October 31, 2025, Plaintiff Dawkins paid the $72.49 in IEEPA tariffs to DHL. The Transaction ID for the payment was 176286544-80459956.

<b>CLASS ACTION ALLEGATIONS</b>

38.     Plaintiffs bring this action on behalf of themselves and as a class action for all others similarly situated, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class is defined as follows:

> **Nationwide Class**: All customers of Defendant who were assessed additional fees, surcharges, duties, and other tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA (the "Class").

39.     This Nationwide Class shall be referred to herein as the "Class."

40.     Plaintiffs reserve the right to amend the Class definitions if further investigation

and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

41.     Excluded from the Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and judicial officers and its immediate family members and associated court staff assigned to this case.

42.     The particular members of the Class are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from major retail sellers.

43.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     The proposed Class is so numerous that the joinder of all members is impracticable.

45.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

46.     **Numerosity (Fed. R. Civ. P. 23(a)(1)):** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown currently, such information is in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process.

47.     **Commonality (Fed. R. Civ. P. 23(a)(2)):** There are questions of law and fact common to the Class that are capable of generating common answers, including: whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein; whether Defendant's conduct was unlawful, unfair, deceptive, misleading, or

otherwise actionable under applicable federal and state law; whether Defendant breached duties owed to Plaintiffs and Class Members; whether Defendant knew or should have known of the tariffs and custom duties imposed were done so unlawfully; whether Defendant's conduct caused injury to Plaintiffs and Class Members; whether Defendant was unjustly enriched as a result of the conduct alleged herein; and whether Defendant is liable to Plaintiffs and Class Members for damages, restitution, disgorgement, or other equitable relief.

48. **Typicality (Fed R. Civ. P. 23(a)(3)):** Plaintiffs' claims are typical of the claims of the members of the Class, because, *inter alia*, all Class Members have been injured through the uniform misconduct described above. Moreover, Plaintiffs' claims are typical of the Class Members' claims because Plaintiffs are advancing the same claims and legal theories on behalf of himself and all members of the Class. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as the other members of the proposed Class.

49. **Adequacy (Fed. R. Civ. P. 23(a)(4)):** Plaintiffs will fairly and adequately protect the interest of the members of the Class. Plaintiffs and the members of the Class were all assessed tariffs and other collection duties as a result of the tariffs imposed by the United States pursuant to IEEPA. Plaintiffs have retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs have no antagonistic interests to those of the Class, and Defendant has no defenses unique to Plaintiffs.

50. **Injunctive and/or Declaratory Relief (Fed. R. Civ. P. 23(b)(2)):** Defendant has acted on grounds that apply generally to the proposed Class, making declaratory and injunctive relief appropriate with respect to the proposed Class as a whole. Defendant's uniform practice of collecting tariffs imposed by the United States pursuant to IEEPA from consumers and failing to reimburse consumers for these unlawful tariffs warrants class-wide declaratory and injunctive relief.

51.     **Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):** A class action is superior to all other available means for the fair and efficient adjudication of claims of Plaintiffs and Class Members. There are questions of law and fact common to all Class Members that predominate over questions affecting only individual Class Members. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be incurred by individual litigation of their claims against Defendant. It would be virtually impossible for a member of the Class, on an individual basis, to obtain effective redress for the wrongs committed against him or her. Further, even if the Class Members could afford such individualized litigation, the court system could not. Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. On the other hand, the class action device provides the benefits of adjudication of these issues in a single proceeding, economics of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

52.     Plaintiffs seek monetary damages, including compensatory damages on behalf of the Class, and other equitable relief on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described. Unless a Class is certified, Defendant will be allowed to profit from their unfair and unlawful practices, while Plaintiffs and the members of the Class will have suffered damages. Unless a Class-wide injunction is issued, Defendant may continue to benefit from these alleged violations, and the members of the Class may continue to be unfairly treated making final injunctive relief appropriate with respect to the Class as a whole.

53.     **Common Questions of Fact and Law (Fed. R. Civ. P. 23(b)(4)):** This action

involves questions of law and fact common to the Class. The common legal and factual questions include, but are not limited to, the following:

a. Whether Defendant engaged in the uniform conduct, practices, representations, omissions, or policies alleged herein;

b. Whether Defendant's conduct was unlawful, unfair, deceptive, misleading, or otherwise actionable under applicable federal and state law;

c. Whether Defendant breached duties owed to Plaintiffs and Class Members;

d. Whether Defendant knew or should have known of the tariffs and custom duties imposed were done so unlawfully;

e. Whether Defendant's conduct caused injury to Plaintiffs and Class Members;

f. Whether Defendant was unjustly enriched as a result of the conduct alleged herein; and

g. Whether Defendant is liable to Plaintiffs and Class Members for damages, restitution, disgorgement, or other equitable relief.

54. These common questions are capable of class wide resolution because they arise from Defendant's uniform conduct and do not depend on individualized proof. The determination of these issues will resolve central aspects of Defendant's liability in a single adjudication and will materially advance the resolution of this litigation.

## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf of Plaintiffs and the Class)

55. Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

56. Plaintiffs and members of the Class entered into contracts with Defendant for shipping, brokerage, customs clearance, and related services (the "Shipping Contracts").

57.     The Shipping Contracts include Defendant's Terms and Conditions, Service Guides, brokerage agreements, and related shipping documentation, which govern the parties' rights and obligations.

58.     Under the Shipping Contracts, Defendant agreed to provide shipping and customs clearance services in exchange for specified fees and charges.

59.     The Shipping Contracts authorize Defendant to collect and pass through only lawful duties, taxes, or governmental charges actually owed in connection with importation.

60.     The Shipping Contracts do not authorize Defendant to charge, collect, or retain unlawful, invalid, or unauthorized duties, tariffs, or related surcharges.

61.     Defendant charged Plaintiffs and members of the Class additional tariffs, fees, surcharges, duties, and tariff-related amounts purportedly imposed pursuant to tariffs declared under the IEEPA.

62.     The contracts, and upon information and belief Defendant's other records, identify the exact amount of the unlawful additional tariffs, fees, surcharges, duties, and tariff-related amounts that Defendant charged. In other words, the unlawful tariffs and related charges were specified by Defendant and passed directly on to Plaintiffs and the members of the Class, who then paid those tariffs and related charges.

63.     The Supreme Court of the United States has now held that IEEPA does not authorize the United States to impose those tariffs, and that such tariffs were unlawful and imposed without statutory authority.

64.     As a result, the tariff-related charges Defendant imposed and collected were unlawful and not authorized governmental duties.

65.     By charging and collecting unlawful tariff-related fees, Defendant breached the express terms of the Shipping Contracts.

11

66.     Defendant further breached the Shipping Contracts by failing to refund unlawful charges collected from Plaintiffs and Class members.

67.     Defendant's conduct also breached the implied covenant of good faith and fair dealing inherent in every contract.

68.     Defendant exercised its contractual discretion in bad faith by charging and retaining fees that were not legally owed and that Defendant was not authorized to impose. Defendant's conduct deprived Plaintiffs and Class members of the benefit of their bargain, which was to pay only lawful and authorized shipping-related charges.

69.     As a direct and proximate result of Defendant's breaches, Plaintiffs and Class members suffered damages, including but not limited to:

       a.     Payment of unlawful tariff-related charges;

       b.     Payment of unlawful brokerage and related fees;

       c.     Overpayment for shipping services; and

       d.     Loss of use of money.

70.     Plaintiffs and Class members are entitled to recover damages, restitution, and all other relief permitted by law.

**COUNT II**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiffs and the Class)**

71.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

72.     Plaintiffs plead the equitable remedy of "unjust enrichment" or "restitution" as an alternative remedy should the Court deem there was no contract between the Plaintiffs and Defendant.

73.     Plaintiffs and Class members conferred a direct financial benefit upon Defendant by paying tariff-related charges, fees, and surcharges imposed by Defendant.

12

74. Defendant knowingly and voluntarily received and accepted these benefits.

75. The tariff-related charges Defendant imposed and collected were unlawful and unauthorized.

76. Defendant collected and retained funds to which they were not legally entitled.

77. Defendant also collected brokerage fees, administrative fees, and related charges based upon unlawful tariffs.

78. Defendant retained these funds despite knowing, or having reason to know, that such charges were unlawful, invalid, or subject to refund.

79. It would be inequitable and unjust for Defendant to retain these funds.

80. Plaintiffs and the Class members are entitled to recover from Defendant regardless of whether Defendant, as the "importer of record" (or whether there is another importer of record), ultimately receives a refund from the United States. It would be manifestly unjust and inequitable for Defendant to retain money that Plaintiffs and the Class members wrongfully paid to Defendant, regardless of whether Defendant is reimbursed any of that money, but that is especially true if Defendant is reimbursed any of that money.

81. Plaintiffs and Class members suffered economic injury as a result of Defendant's unjust retention of these funds.

82. Defendant was unjustly enriched at the expense of Plaintiffs and Class members.

83. Equity and good conscience require that Defendant disgorges all unlawfully obtained funds and make restitution to Plaintiffs and Class members.

## COUNT III
### DECLARATORY RELIEF
**(On Behalf of Plaintiffs and the Class)**

84. Plaintiffs incorporates all previous paragraphs as if fully set forth herein.

85. An actual, justiciable controversy exists between Plaintiffs and Defendant

regarding the rights and obligations of the parties with respect to fees collected by Defendant from Plaintiffs and Class Members authorized by the IEEPA. This controversy is not hypothetical or abstract.

86.    Plaintiffs seek a declaratory judgment pursuant to 28 U.S.C. § 2201 that:

a.    Defendant engaged in uniform conduct of charging tariffs authorized by the IEEPA to consumers such as Plaintiffs and Class Members when those tariffs and customs duties were not lawfully authorized;

b.    Defendant breached duties owed to Plaintiffs and Class Members;

c.    Defendant knew or should have known that the tariffs and customs duties were unlawfully imposed;

d.    Defendant's conduct caused injury to Plaintiffs and Class Members; and

e.    Defendant is obligated to return to Plaintiffs and proposed Class Members all IEEPA tariffs and customs duties collected from them together with interest.

87.    Declaratory relief is necessary and appropriate because Defendant collected duties and fees pursuant to tariffs that the Supreme Court has declared were never lawfully authorized and Defendant has not returned those sums to consumers who paid them. Without judicial intervention, Plaintiffs and the Class have no assurance that Defendant will return the unlawfully collected sums.

88.    Class members have no alternative remedy. Because Defendant served as the importer of record, only Defendant has standing to seek a refund from the government. Individual consumers cannot file suit in the Court of International Trade to recover duties they paid through Defendant. Without the declaratory relief sought in this action, Class members will

14

be left without any mechanism to recover the unlawful tariffs and fees they were forced to pay.

## COUNT IV
## MONEY HAD AND RECEIVED
### (On Behalf of Plaintiffs and the Class)

89.     Plaintiffs incorporate all previous paragraphs as if fully set forth herein.

90.     Defendant received money from Plaintiffs and Class Members in the form of IEEPA tariffs and fees that Defendant billed and collected from them.

91.     Defendant received this money for the purpose of repaying itself the IEEPA tariffs it had advanced, as the importer of record, as lawfully assessed duties on imported goods, and for the purpose of compensating itself for customs entry processing services. The Supreme Court has now held that the IEEPA tariffs were never lawfully authorized. The fees had no lawful basis.

92.     The consideration for these payments has failed in whole. Proposed Class Members paid Defendant to satisfy a duty obligation that never lawfully existed and to compensate Defendant for customs processing that was necessitated solely by an unlawful tariff regime.

93.     In equity and good conscience, Defendant should not be permitted to retain these funds. The money belongs to Plaintiffs and the Class, and Defendants are obligated to return it.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other Members of the Class alleged herein, respectfully request that the Court enter judgment in their favor and against Defendant as follows:

   A.     For an order certifying the Class and naming Plaintiffs as the representatives for the Class and Plaintiffs' attorneys as Class Counsel;

   B.     For an order declaring that Defendant's conduct violates the causes of action referenced herein;

C.      For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

D.      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive and declaratory relief as pleaded or as the Court may deem proper;

H.      For an order awarding Plaintiffs and the Class their reasonable attorneys' fees and expenses and costs of suit; and

I.      For an order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury of all claims in this Complaint and of all issues in this action so triable as of right.

Dated: April 8, 2026.                         Respectfully Submitted,

*/s/ Rachel Dapeer*
Rachel Dapeer, Esq.
**DAPEER LAW, P.A.**
Florida Bar No. 108039
520 South Dixie Hwy, # 240
Hallandale Beach, FL 33009
Telephone: 954-799-5914
Email: rachel@dapeer.com

Matthew E. Lee*
Jeremy R. Williams*
Patrick M. Wallace*
**LEE SEGUI PLLC**
421 N. Harrington Street, Suite 460
Raleigh, NC 27603
Telephone: (919) 600-5000
mlee@leesegui.com
jwilliams@leesegui.com
pwallace@leesegui.com

*Attorneys for Plaintiffs & Proposed Class*

*\*to be admitted Pro Hac Vice*